NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAUDE B. TOWNSEND., JR., <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF MERCER, et al., <br><br> Defendants. | Civil Action No. 22-4960 (GC) (JBD) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon the motions for summary judgment filed by Plaintiff Claude B. Townsend, Jr., and Defendants County of Mercer (the County) and the American Federation of State, County and Municipal Employees Local 2287 (the Union), under Federal Rule of Civil Procedure (Rule) 56(a). (ECF Nos. 24, 25, & 29.) The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **GRANTS** Defendants' motions for summary judgment (ECF Nos. 24 & 25) and **DENIES** Townsend's motion for summary judgment (ECF No. 29).

I.   BACKGROUND

   A.  Facts Undisputed, or Substantiated by Record Evidence

In September 2021, Townsend was a full-time motor vehicle operator working for the County's transportation division. (ECF No. 25-1 ¶¶ 1-5.) Since 2017, he was responsible for transporting senior citizens and disabled individuals throughout the County consistent with their immediate needs. (*Id.* ¶ 5; ECF No. 24-2 ¶ 16.) As a County employee, Townsend was also a

member of the Union.  (ECF No. 24-2 ¶ 3.)

In August of 2021, the County Executive issued Executive Order 2021-02, which established a vaccination and testing policy in response to the COVID-19 Delta Variant.  (ECF No. 25-1 ¶ 13; ECF No. 25-4 at 15-16.)  The Policy recommended that all County employees receive a COVID-19 vaccine and required that employees without proof of vaccination submit to weekly COVID-19 testing at the County's expense.  (ECF No. 25-4 at 15-16.)  The Policy allowed employees to test for COVID-19 during working hours.  (*Id.* at 18.)  The County also allowed employees to request "an exemption from the vaccination policy due to a medical reason, or because of a sincerely held religious belief."  (*Id.* at 20.)  Any employee who did not provide proof of vaccination or submit to weekly tests was to be suspended without pay, subject to termination, until the employee met either condition.  (*Id.* at 20, 28-29.)

On September 1, 2021, Townsend sent a letter to the Office of Personnel requesting a "cultural or traditional" exemption to the Policy based on his status as an "American Indian."  (*Id.* at 23, 37.)  Townsend asked to be excused from both vaccination and testing.  (*Id.* at 23.)  Townsend did not specify a religious belief; he stated that as an "American Indian," he did "not agree with the Covid or flu shots," and demanded that the County provide him with the laws requiring him to submit to vaccination and testing.  (*Id.*)

On September 20, the County denied Townsend's request to be exempted from both vaccination and testing and advised that his failure to comply would "result in an immediate suspension without pay pending termination."  (*Id.* at 31.)  According to the County's Deputy Director of the Department of Personnel, "the County determined it was a grave and unnecessary risk" to permit Townsend "to continue to make daily contact with other county employees" and the "elderly and disabled constituents on his transportation route . . . without a COVID-19 vaccination or a consistent COVID-19 testing protocol," especially where Townsend submitted no

2

information other than his "reclaimed . . . American Indian status" as to why he "could not submit to a COVID-19 test." (*Id.* at 8.)

On September 21, not yet aware that the County had sent him a response the day prior, Townsend submitted an official grievance with the Union demanding that the County answer his September 1 letter. (*Id.* at 35, 188-190.) On September 23, he submitted a second grievance arguing that the Policy was unlawful and again requesting a "cultural or traditional" exemption. (*Id.* at 37.) On September 30, the County issued Townsend a Preliminary Notice of Disciplinary Action, charging him with violating the Policy and indicating that the County would be seeking his termination. (*Id.* at 41.) On October 3, Townsend filed a third grievance seeking to appeal his disciplinary charges to binding arbitration in accordance with the grievance procedures in the collective negotiations agreement between the County and the Union (the Contract). (*Id.* at 48; ECF No. 24-2 ¶ 4.) After a formal disciplinary hearing on October 15, during which Townsend was represented by the Union's president, the Hearing Officer found that the County had met its burden to terminate Townsend's employment. (ECF No. 24-3 at 91; ECF No. 25-4 at 57.) The County furnished Townsend with the Hearing Officer's decision on October 29 and notified him that his termination was effective October 1. (ECF No. 25-4 at 70.)

### B. Procedural Background[1]

Townsend filed his Complaint on August 8, 2022, asserting claims against the County under the First and Ninth Amendments to the United States Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*; and the New Jersey Law Against Discrimination

---

[1] The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Townend's state-law claim under § 1367(a).

(NJLAD), N.J. Stat. Ann. § 10-5, *et seq.*[2]  (ECF No. 1 at 9.)  Townsend also asserts a breach-of-contract claim against the Union.[3]  (*Id.* at 8-9.)

Defendants filed separate motions for summary judgment.  (ECF Nos. 24 & 25.)  Townsend did not file his own motion for summary judgment before dispositive motions were due.  Instead, he requested an extension of time to respond to Defendants' motions, which the Court granted.  (ECF No. 27 at 1.)  Townsend then filed his own motion for summary judgment without filing a separate opposition to Defendants' motions.  (ECF No. 29.)  Each Defendant replied to Townsend's motion.  (ECF Nos. 30 & 31.)

## II.     LEGAL STANDARD

### A.  Summary Judgment—Rule 56

"Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure."  *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).  Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)).  "A fact is material if—taken as true—it would affect the outcome of the case under governing law."  *M.S. by & through Hall v.*

---

[2]  Townsend asserts claims in his opposition brief that he did not allege in his Complaint. (*See* ECF No. 29 at 9-12 (asserting arguments under the Fourteenth Amendment; the American Indian Religious Freedom Act, 42 U.S.C. § 1996; and the United Nations Rights of Indigenous Peoples).)  Townsend "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008). Thus, the Court will not consider these arguments when deciding the instant motions.

[3]  The Complaint and motion for summary judgment do not clearly identify which of the claims Townsend asserts against each Defendant.  But during his deposition, Townsend clarified that he was asserting his discrimination claims against only the County, and his breach of contract claim against the Union.  (ECF No. 25-4 at 238-241.)

*Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

The standard is the same in the context of dueling motions for summary judgment. *See Auto-Owners Ins.*, 835 F.3d at 402. "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

### III. DISCUSSION

#### A. *Pro Se* Leniency

The Court first denies Defendants' requests to reject Townsend's filing for lateness and noncompliance with the court rules, and the Union's request to sanction Townsend. (ECF No. 30 at 5; ECF No. 31 at 8, 21.)

Townsend did not file his motion until almost two months after the Court's deadline, and he did not file a separate Statement of Undisputed Material Facts as required by Local Civil Rule 56.1.[4] Nevertheless, the Court shall afford Townsend the leeway traditionally afforded to pro se litigants and will construe his filing as both a cross-motion for summary judgment and an opposition to Defendants' motions. *Folsom v. Superior Ct. of N.J., Middlesex Vicinage*, 2008 WL

---

[4] Townsend is "a repeat player before this Court." *See Townsend v. Princeton Police Department*, Civ. No. 21-3212, 2023 WL 1822680, at *1 (D.N.J. Feb. 8, 2023) (citing *Townsend v. N.J. Transit*, No. 22-540, 2022 WL 10646554, at *2 (D.N.J. Oct. 18, 2022), *aff'd*, No. 22-2993, 2023 WL 195160 (3d Cir. Jan. 17, 2023) (summarizing Plaintiff's "abuse of process in attempting to litigate the same claims in multiple forums for over a decade")). This Court has previously advised Townsend that a motion for summary judgment must comply with Local Civil Rule 56.1. (*See* ECF No. 30-2 at 7.)

1782236, at *4 (D.N.J. Apr. 17, 2008); *see Prioli v. Cnty. of Ocean*, Civ. No. 18-00256, 2021 WL 4473159, at *1 n.1 (D.N.J. Sep. 30, 2021) (construing the plaintiffs' request for summary judgment within an opposition brief as the plaintiffs' cross-motion for summary judgment).  To the extent that Townsend's factual assertions vary from those in Defendants' Rule 56.1 statements, the Court considers those facts to be disputed, and the balance of Defendants' factual assertions supported by the record will be deemed uncontested.  *See Folsom*, 2008 WL 1782236, at *4 (excusing a pro se plaintiff's failure to file a statement of material facts and treating the defendants' factual statements as uncontested unless disputed by plaintiff or contradicted by evidence).  Because all parties cite to relevant portions of the record, the record is not voluminous, and no party has requested or submitted additional briefing, the Court will rule on the merits rather than dismiss Townsend's filings for technical violations.  *See Ruales v. Spencer Savings Bank*, Civ. No. 18-9192, 2021 WL 4843590, at *1 (D.N.J. Oct. 18, 2021) (excusing a pro se plaintiff's failure to submit a statement of material facts where the record and briefing was sufficient to decide motions for summary judgment).

   **B.  Title VII Claim**[5]

      *1. Discrimination*

Townsend claims that the County discriminated against him based on his "national origin, race (American Indian)," and "religion" in violation of Title VII, which prohibits employers from discriminating against any individual "because of such individual's race, color, religion, sex, or national origin."  (ECF No. 1 ¶ 8.)  42 U.S.C. § 2000e-2(a)(1).

---

[5]   After Townsend's employment was terminated, he filed an action with the United States Equal Employment Opportunity Commission, which ultimately made no findings and issued Townsend a right-to-sue letter on June 7, 2022.  (ECF No. 1-1.)  Townsend filed suit on August 8, 2022.  (ECF No. 1.)  Thus, Townsend has demonstrated that he exhausted his administrative remedies and that his Title VII claims are not time-barred.  *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469-70 (3d Cir. 2001).

Townsend bears the initial burden of establishing a prima facie case of discrimination under Title VII. *See Perry v. N.J. Dept. of Corrections*, Civ. No. 21-3523, 2023 WL 3742850, at *4 (D.N.J. May 31, 2023) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). A prima facie case of employment discrimination requires Townsend to show that he (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action despite being qualified; and (4) was in a position that the employer sought to fill with similarly qualified individuals under circumstances that raise an inference of discrimination. *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglass*, 411 U.S. at 802). "The 'central focus' of the *prima facie* case 'is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Id.* at 798 (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

If Townsend established a prima facie case, the burden shifts to the County to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016). Townsend then bears the final burden to demonstrate that the County's proffered reason is a pretext, and that the real reason for the adverse employment action was discriminatory animus. *See id.*

Here, Townsend has not offered any evidence that the County treated Townsend less favorably than others because of his race or national origin.[6] In fact, Townsend testified in his deposition that the vaccination and testing requirements applied equally to all County employees. (ECF No. 25-4 at 245.) And Townsend has not claimed that the County exempted other non-

---

[6] The term "national origin" "refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973). Here, Townsend does not distinguish his claim of racial discrimination from his claim of national origin discrimination, and cites only to his "status as an American Indian." (ECF No. 29-2 at 2.) Therefore, the Court analyzes these claims identically.

Native American employees from vaccination and testing and allowed them to maintain employment.

Although Townsend "need not establish that precise kind of disparate treatment to establish a claim of discrimination, he must establish some causal nexus between his membership in a protected class and" his termination. *Sarullo*, 352 F.3d at 798. Townsend did provide the County with evidence establishing his Native American heritage. (ECF No. 25-4 at 24-26.) But he provided no evidence connecting his heritage to his inability or unwillingness to be tested for COVID-19. Townsend concedes that his September 1 exemption request did not establish a connection between his race and his refusal to submit to testing. (ECF No. 25-4 at 183-84.) Townsend's evidence of discrimination is only that he requested an exemption because of his "status as an American Indian," and that the County denied his request. (ECF No. 29-2 at 2.) Put differently, because he based his exemption request on his Native American heritage, the County's denial of his request and ultimate termination of his employment was discriminatory. (*See* ECF No. 25-4 at 261 (stating that the Policy discriminated against him for his race, religion, or national heritage "[b]ecause I wrote a letter of accommodation, put my status down; [and] they terminated me").)

But Townsend's invocation of his heritage as a basis for refusing to submit to COVID-19 testing is not evidence that the County terminated his employment *because of* his heritage, as it is undisputed that the County applied the Policy equally to all employees. Therefore, there is no genuine dispute that Townsend has not established a "causal nexus between his membership in a protected class" and the County's decision to terminate him. *Sarullo*, 352 F.3d at 798. Because Townsend has not established a prima facie case of employment discrimination under *McDonnel Douglas*, the burden has not shifted to the County to proffer a legitimate, nondiscriminatory reason for Townsend's termination. *See McDonnel Douglass*, 411 U.S. at 802.

But even if the burden were to shift to the County, the County has articulated a legitimate basis for Townsend's termination. The County's stated reason for denying Townsend's testing exemption request was that "such an exemption would jeopardize the security and health of fellow county employees, citizens and/or patrons." (ECF No. 25-4 at 31.) Thus, the County would have satisfied its burden "at the second stage of the *McDonnel Douglas* tripartite framework" by articulating "a legitimate nondiscriminatory reason for the adverse employment action at issue." *Jones*, *v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999).

It therefore would have been incumbent upon Townsend to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *See Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Townsend has not done so. He has provided no evidence contradicting the Deputy Director of the Department of Personnel's sworn statement that the County decided to suspend and ultimately terminate Townsend because his refusal to vaccinate or test for COVID-19 created a "grave and unnecessary risk" both to "other county employees" and the "elderly and disabled constituents on [Townsend's] transportation route." (*Id.* at 8-9.) The Hearing Officer who oversaw Townsend's formal disciplinary hearing agreed with the County's decision to terminate Townsend because his refusal to comply with the testing requirement "could potentially expose his fellow employees and the public to severe illness or death, with no justification." (*Id.* at 60.) Townsend does not dispute that the County had an obligation to try to prevent its employees from contracting COVID-19 and spreading it to the public; that it was reasonable for the County to establish safety protocols for County employees who encounter the public; and that both vaccination and weekly testing are methods that protect against COVID-19. (*Id.* at 250-254.)

9

Indeed, Townsend does not appear to argue that the County's explanation for his firing was a pretext or should be disbelieved. He offers no evidence, other than his status as a Native American, to contradict the County's stated reason for his termination. Absent such evidence, no reasonable jury could find that the County's justification for Townsend's removal was a pretext for invidious racial discrimination. For these reasons, the Court grants summary judgment in favor of the County on Townsend's Title VII claim of employment discrimination based on his race and national origin.

Townsend also claims that he was "discriminated against based on" his "religion in violation of Title VII." (ECF No. 1 ¶ 8.) But in Townsend's motion for summary judgment, Townsend characterizes his exemption request as "secular in nature" and concedes that he "did not claim to be a member of any religious organization or denomination" in his exemption request. (ECF No. 29 at 8, 10.) And although Townsend makes several references to freedom of religion (ECF No. 29 at 9), the record supports the "secular" nature of Townsend's exemption request (*see* ECF No. 25-4 at 37 (acknowledging in the September 23 grievance that Townsend requested "cultural or traditional" accommodations, but "not religious or medical accommodations"); 111-112 (characterizing his exemption request as a "cultural and traditional accommodation" as opposed to a religious accommodation); 138-139 (recognizing that his "Anasazi Indian" heritage is "a culture" as opposed to a "religion")). Townsend has not provided or cited any facts showing that he refused to follow the Policy and was ultimately terminated due to a religious belief. Given the lack of factual support and his express concessions that his request was "secular," no reasonable jury could conclude that the County discriminated against Townsend on the basis of his religion. The Court therefore grants summary judgment in favor of the County on Townsend's Title VII religious discrimination claim.

*2. Retaliation*

Townsend also alleges that the County terminated him in retaliation for his September 1, 2021 letter requesting an exemption from the County's COVID-19 vaccination and testing policy. (ECF No. 1 at 8.) Title VII provides that an employer may not retaliate against an employee who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish illegal retaliation under Title VII, Townsend must show that (1) he engaged in activity protected by Title VII; (2) he was subject to an adverse employment action; and (3) a causal link exists between the two. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Id.* at 341 (quoting *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)). Actions that are protected under Title VII's opposition clause "include formal charges of discrimination 'as well as informal protests of discriminatory practices, including making complaints to management.'" *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)); *see also Crawford v. Metro. Gov. of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276-280 (2009) (finding that "opposition" can include not only taking an active stand against an employer's discriminatory practices, but also "refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons").

In his September 1 letter, Townsend did not protest the Policy as "racially discriminatory" or accuse the County of applying it in a racially-discriminatory manner. Instead, he notified the County of his intent to decline COVID-19 vaccination and testing based on his "status as an

American Indian," without, as Townsend concedes, connecting his race or national origin to his refusal to submit to vaccination or testing. (ECF No. 29-2; ECF No. 25-4 at 183-84.) And even if, liberally construed, Townsend's letter could constitute "opposition" to behavior that he reasonably believed discriminated against him based on his race, the Court's analysis does not end upon the establishment a prima facie case. The *McDonnel Douglas* burden-shifting framework controlling Title VII discrimination claims also applies to Title VII retaliation claims. *See Tourtellotte*, 636 F. App'x at 841. The Court has already found that if the burden were to shift to the County, the County has satisfied its burden of articulating a legitimate, nonretaliatory reason for Townsend's termination — specifically, that his refusal to vaccinate or test "would jeopardize the security and health of fellow county employees, citizens and/or patrons." (ECF No. 25-4 at 31.) Thus, to survive the County's motion for summary judgment, it is incumbent upon Townsend to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *See Tomasso*, 445 at 706 (quoting *Fuentes*, 32 F.3d at 764). Townsend has not presented any facts supporting his conclusory allegation that his exemption request — as opposed to Townsend's unequivocal refusal to comply with the Policy — motivated the County to terminate his employment. *See Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir.1989) (a nonmoving party cannot rely on unsupported allegations contained in its pleadings to survive a motion for summary judgment (citing *Celotex*, 477 U.S. 317, 325 (1986))). Thus, there is no evidence that would allow a reasonable fact finder to conclude that Townsend's request for an exemption based on his race or national origin, rather than his refusal to follow the Policy, caused the County's adverse employment action.

Nor could a reasonable jury conclude that the County terminated Townsend in retaliation

for the three grievances he filed after submitting his exemption request. As early as September 10, 2021, before Townsend ever filed his grievances dated September 21, September 23, and October 3, the County warned Townsend that his noncompliance with the Policy could result in termination. (ECF No. 25-4 at 28-29; ECF No. 1 ¶ 6.) The County denied Townsend's exemption request on September 20 and warned him that noncompliance would result in suspension without pay pending termination — again, before Townsend filed his first grievance. (ECF No. 25-4 at 31.) Townsend does not dispute the timing or authenticity of the County's letters.[7] For this reason, no reasonable fact finder could conclude that the County denied Townsend's exemption request and ultimately terminated Townsend in retaliation for filing three grievance forms. *See Spence v. Fox*, 159 F. Supp, 3d 483, 500 (D.N.J. 2014) (finding that no reasonable jury could find a causal link between the plaintiff's equal employment opportunity complaints and her employer's adverse employment actions because she filed her complaints after the employer had already initiated the adverse employment actions). Therefore, summary judgement on this claim is granted for the County and denied as to Townsend.

### C. NJLAD

When analyzing intentional employment discrimination claims, Courts "employ the same framework and standard of review . . . under Title VII" and the NJLAD. *Prioli v. Cnty. of Ocean*, Civ. No. 18-256, 2021 WL 4473159, at *18 (D.N.J. Sep. 30, 2021) (analyzing both Title VII and NJLAD intentional discrimination claims under the *McDonnel Douglass* framework); *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 282 n.13 (3d Cir. 2001) (finding that claims of

---

[7] Although Townsend's grievance dated September 21 demanded that the County answer his September 1 exemption request, Townsend acknowledges that the County had already answered his request and Townsend had simply not yet seen the County's response. (ECF No. 25-4 at 189-190.) Thus, there is no genuine dispute that the County denied Townsend's request and warned him of the possibility of termination before Townsend filed his first grievance.

13

religious discrimination under the NJLAD and Title VII are analyzed in the same manner (citing *Chou v. Rutgers, State Univ.*, 662 A.2d 986, 993 (App. Div. 1995))); *Behrens v. Rutgers Univ.*, Civ. No. 94-358, 1996 WL 570989, at *4 (D.N.J. Mar. 29, 1996) (analyzing summary judgment motions on claims of racial discrimination under Title VII and the NJLAD under the same framework). Accordingly, Townsend's claims under the NJLAD do not survive summary judgment for the same reasons as Townsend's Title VII claims. *See Abramson*, 260 F.3d at 282 n.13 (finding that because the plaintiff's Title VII claim survived summary judgment, her NJLAD claims survived as well). The Court therefore grants the County's motion for summary judgment on Townsend's claims under the NJLAD, and denies Townsend's motion.

### D. Constitutional Claims

Townsend further alleges that the County violated his rights under the First and Ninth Amendments. (ECF No. 1 at 9.) The County argues that the Court should dismiss Townsend's constitutional claims outright because they have not been "pled under the statutory mechanism for such claims, 42 U.S.C. § 1983." (ECF No. 25-2 at 13-14 (quoting *McGowan v. New Jersey*, Civ. No. 08-5841, 2009 WL 1687663, at *7 (D.N.J. Jun. 16, 2009)).) Although Townsend has not explicitly pled his First and Ninth Amendment claims under § 1983, Townsend "filed his complaint pro se," and therefore the Court "must liberally construe his pleadings" and "apply the applicable law, irrespective of whether [the] pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (citation omitted). The Court will not reject Townsend's constitutional claims for not expressly citing to the proper statutory mechanism for enforcement. *See Wilson v. King*, 2010 WL 1071651, at *1 n.3 (E.D. Pa. Mar. 22, 2010) (construing a pro se plaintiff's complaint as a claim for civil conspiracy under § 1983 despite the plaintiff not explicitly stating a § 1983 claim).

### *1. First Amendment Claim*

To establish a claim of retaliation under the First Amendment, Townsend must show that he engaged in activity that is protected by the First Amendment, and that his protected activity substantially motivated the County's adverse employment action. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). Townsend appears to base his First Amendment claim on violations of both his rights to "freedom of expression" and the free exercise of religion. (*See* ECF No. 1 at 8 (alleging Townsend was terminated "in retaliation of my request letter"); ECF No. 29 at 8-9 (asserting a violation of Townsend's rights to "freedom of expression" and to "exercise his traditional religious rights").)

First, the Court grants summary judgment in favor of the County on Townsend's First Amendment free exercise of religion claim for the same reasons in the Court's Title VII analysis. Specifically, because the record contains no evidence that Townsend refused to follow the Policy and was ultimately terminated due to a religious belief, and because of his express concessions that his exemption request was secular,[8] no reasonable fact finder could conclude that Townsend's religious beliefs motivated the County to deny his exemption request and terminate his employment.

The Court turns next to Townsend's argument that the County violated his right to "freedom of expression." Townsend cites a decision by the New Jersey Department of Labor and Workforce Development Appeal Tribunal, in which Townsend claims the Appeal Tribunal found that the County violated Townsend's First Amendment rights. (ECF No. 29 at 8.)[9] But Townsend's reading of the decision is misplaced. The Appeal Tribunal held that the basis for

---

[8]    (ECF No. 29 at 8, 10.)

[9]    Townsend also submits a copy of the decision. (ECF No. 29-2 at 22-24.)

15

Townsend's termination — his refusal to follow a vaccination policy with a religious exemption — does not disqualify him from receiving unemployment benefits under New Jersey's unemployment compensation statute. (ECF No. 29-2 at 22-24.) The Appeal Tribunal also cites *Valent v. Board of Review, Department of Labor*, 91 A.3d 644 (N.J. Super. App. Div. 2014). There, the New Jersey Superior Court, Appellate Division, held that the state could not deny unemployment benefits to a terminated employee for "misconduct" where the employee, for secular reasons, violated a vaccine mandate with religious exemptions. *Id.* at 646-47. The court held that denying the employee's application for unemployment benefits because she refused to vaccinate for secular reasons violated her "freedom of expression by endorsing the employer's religion-based exemption to its flu vaccination policy." *Id.* at 646.[10]

The New Jersey Appellate Division in *Valent* made clear that it based its decision on the specific circumstances of that case and in the context of appeals for unemployment benefit applications. *Id.* at 648. And as the United States Court of Appeals for the Third Circuit and other "federal courts have uniformly held, there is no fundamental right to refuse vaccination." *Children's Health Def., Inc. v. Rutgers, State Univ. of N.J.*, Civ. No. 22-2970, 2024 WL 637353 (3d Cir. Feb. 15, 2024) (affirming district court's dismissal of constitutional challenges to a vaccination policy that allowed for religious exemptions); *see also Klaaseen v. Trustees of Indiania Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (policy requiring students to either vaccinate

---

[10] Both the Appeal Tribunal decision concerning Townsend's unemployment benefits and the *Valent* decision cite N.J. Stat. Ann. § 43:21-5(b), which defines when a terminated employee should be disqualified from receiving unemployment benefits for committing misconduct. Townsend asserts § 43:21-5(b) as a basis for relief in his Complaint. (ECF No. 1 at 4.) Even construed liberally, the Court cannot discern this claim where it does not appear that this provision provides a basis for a private cause-of-action, and where Townsend appears to have abandoned this claim by not arguing against the County's motion for summary judgment with respect to this provision. Therefore, the Court grants the County's motion for summary judgment with respect to Townsend's claim under § 43:21-5(b).

16

against COVID-19, or to test for COVID-19 twice a week if exempt for religious or medical reasons, was not unconstitutional). For these reasons, there is no genuine issue of material fact that could lead a reasonable jury to conclude that the County violated Townsend's right to "freedom of expression" under the First Amendment. Summary judgment is appropriate as to the County and denied as to Townsend for his First Amendment claim.

### 2. *Ninth Amendment Claim*

The Ninth Amendment to the United States Constitution provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. "The Ninth Amendment does not independently provide a source of individual constitutional rights." *Clayworth v. Luzerne Cnty., Pa.*, 513 F. App'x 134, 137 (3d Cir. 2013) (affirming a district court's dismissal of a § 1983 claim based on the Ninth Amendment). Therefore, the Court grants Defendants' motion for summary judgment and denies Townsend's motion with respect to his claim under the Ninth Amendment.

### E. Breach of Contract

Townsend brings a "breach-of-contract" claim against the Union by alleging that the Union breached its duty of fair representation to him in two ways. (ECF No 1 at 8; ECF No. 29 at 8, 10-11.) Townsend first argues that the Union breached its duty by failing to pursue Townsend's official grievances to arbitration. (*See* ECF No. 29 at 11; ECF No. 25-4 at 239 (alleging that "the grievances" formed the basis for his breach-of-contract claim).) Second, Townsend argues that the Union acted arbitrarily when it decided not to file a grievance on behalf of any union member related to the County's COVID-19 Policy. (ECF No. 29 at 11.)

A union is not liable to an aggrieved member for breach of its duty of fair representation unless the union's conduct towards the member was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). And here, Townsend has conceded that the Union did

17

not act arbitrarily, discriminatorily, or in bad faith when processing each of Townsend's three official grievances because ultimately, they were not arbitrable under the Contract. (ECF No. 25-4 at 239-240.)

Townsend's first grievance filed on September 21, 2021 — demanding a response to his exemption request — was resolved before the Union even knew of the grievance. The County had already responded by the time Townsend filed his grievance, and Townsend had simply not seen the response before filing the grievance. (*See* ECF No. 25-4 at 31 (letter response to Townsend's exemption request dated September 20, 2021); 188-190 (acknowledging that the County had already responded to his request before he filed his first grievance).) And Townsend filed the grievance without the Union's knowledge or consultation. (*Id.* at 188-189.) The Union could not have breached its duty of fair representation as to this grievance that was rendered moot before the Union became aware of it. (ECF No. 24-1 at 12 (citing *Veggian v. Camden Bd. of Educ.*, 600 F.Supp.2d 615, 626 (D.N.J. 2009) (finding that a union did not breach its duty of fair representation where circumstances had rendered a plaintiff's grievance moot before the grievance was resolved)).)

Next, it is undisputed that Townsend's second grievance filed on September 23, 2021 was ineligible for arbitration under the terms of the Contract because it challenged a policy adopted by the employer. (*Id.* at 13-14; ECF No 25-4 at 199-202.) The Union could not have breached its duty by failing to arbitrate Townsend's second grievance if this grievance was not arbitrable under the Contract. *See Sterrett v. Giant Eagle, Inc.*, 681 F. App'x 145, 149-50 (3d Cir. 2017) (finding that where a contract did not give the plaintiff a right to arbitrate claims related to termination, the plaintiff's duty of fair representation claim failed). And Townsend's third grievance filed on October 3, 2021, seeking to appeal the County's decision to terminate his employment to binding arbitration, was similarly ineligible for arbitration. The Contract prohibits the Union from

18

appealing a disciplinary termination through the grievance procedure, making it ineligible for binding arbitration. (ECF No. 24-1 at 15; ECF No. 24-3 at 28 (an employee "against whom disciplinary action has been taken which resulted in . . . discharge . . . shall be required to exercise his statutory right of appeal to the Merit System Board and shall be precluded from having the Union move his appeal to binding arbitration").) Townsend did not confer with or provide a copy of the grievance to the Union, so the Union could not have advised him before he filed his grievance that his termination could not be arbitrated. (ECF No. 25-4 at 216-217.)

For these reasons, there is no genuine dispute of material fact that could allow a reasonable jury to conclude that the Union breached its duty by failing to send non-arbitrable grievances to arbitration. *See Sterrett*, 681 F. App'x at 149-50.

Finally, Townsend has not demonstrated that the Union's decision not to contest the County's Policy was discriminatory or arbitrary. It is undisputed that the Union would not pursue a grievance related to the Policy on behalf of any member, and its decision not to contest the Policy therefore applied equally to all members. (ECF No. 25-4 at 194-195.) Nor has Townsend offered any evidence indicating that the Union decided not to contest the Policy due to improper motives or bad faith. *See Morgan v. Commc'n Workers of Am., AFL-CIO, Dist. 1*, Civ. No. 08-249, 2009 WL 749546, at *12 (D.N.J. Mar. 17, 2009) (granting a union's motion for summary judgment where the plaintiff provided no evidence that her union or her representative acted with "antagonistic motives"). And the record shows that Townsend was represented by his union president at his disciplinary hearing, who argued that Townsend was a "model employee," had "no disciplinary history," and should only be suspended for sixty days, rather than terminated, to further consider his refusal to comply with the Policy. (ECF No. 24-3 at 88.) That Townsend "is no longer employed with" the County is not, as Townsend argues, indisputable evidence that the Union breached its duty of fair representation. (ECF No. 29 at 7.) *See Morgan*, 2009 WL 749546,

19

at *7 (noting that "mere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct" sufficient to show a breach of the duty of fair representation (citing *Riley v. Letter Carriers Local*, 668 F.2d 224, 228 (3d Cir. 1981))). Summary judgment is therefore granted in favor of the Union, and denied as to Townsend.

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, the Court **GRANTS** Defendants' motions for summary judgment (ECF Nos. 24 & 25) and **DENIES** Townsend's motion for summary judgment (ECF No. 29). An appropriate Order follows.

Dated: February 29, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE